**Phillip McBRADY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 183S30.

Supreme Court of Indiana.

March 20, 1984.

William B. Powers, Powers & Somes, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Phillip McBrady, was originally charged with eight counts of theft, a Class D felony, Ind.Code § 35–43–4–2 (Burns Supp.1983), eight counts of conspiracy to commit theft, a Class D felony, Ind.Code § 35–41–5–2 (Burns 1979 Repl.),

and with being a habitual offender, Ind. Code § 35–50–2–8 (Burns Supp.1983). He was convicted by a jury of one count of theft, one count of conspiracy to commit theft, and of being a habitual offender. He was sentenced to two concurrent terms of thirty-two years, but due to our disposition on one issue, the conviction for conspiracy to commit theft must be reversed. After the instant trial, defendant pled guilty to four additional counts of theft in exchange for the dismissal of the remaining theft and conspiracy counts. He was sentenced to four consecutive terms of four years each for these counts of theft and this sixteen-year term was concurrent to the thirty-two year terms imposed upon the jury verdict.

■ With respect to the sentences imposed upon the habitual offender finding, the record shows that the trial court did not clearly specify to which of the underlying felonies of theft or conspiracy to commit theft the enhanced penalty applied and defendant was given two enhanced penalties. The enhanced penalty under the habitual offender count must be imposed for one of the underlying crimes for which defendant was convicted at the jury trial since the habitual offender finding does not impose punishment for a separate crime and there was only one habitual offender count. *Short v. State,* (1982) Ind., 443 N.E.2d 298, 301; *Yager v. State,* (1982) Ind., 437 N.E.2d 454, 457. However, due to our reversal of the conspiracy conviction, there is no error remaining on the thirty-two year sentence for the theft conviction.

In this direct appeal, defendant raises essentially only the issue of the sufficiency of the evidence. He contends that the state did not prove each element of the crimes charged beyond a reasonable doubt and that he was denied the presumption of innocence throughout the trial.

A brief summary of the facts from the record shows that early in the morning of June 26, 1981, Alonzo Graham found that his 1976 Cadillac DeVille was not parked on the street where he had left it. He immediately notified the police that his car had been stolen. A police detective, Sam McPherson, testified that he was working that day as a "fence" in a sting operation called "Woody's Knothole" in Indianapolis. McPherson testified that his job was to purchase stolen property from thieves. The sting operation was housed in a three-room building equipped with microphones, a 35 millimeter camera, two video recorders, and five television monitors which recorded the transactions between McPherson and the thieves.

During the afternoon of June 26, 1981, the defendant and another individual, Gregory Kirk, entered a room at Woody's Knothole. Kirk told McPherson that defendant had an automobile that he wanted to sell. McPherson and defendant went outside where a 1976 Cadillac DeVille was parked. Defendant told McPherson that he and a woman had stolen the car that morning and the two men agreed upon a price of six hundred and fifty dollars for the vehicle. The car was later identified as the one stolen from Alonzo Graham that morning. McPherson searched the car and found the keys in the ignition and the registration in the glove compartment.

Defendant and McPherson went back into the house and McPherson gave defendant six hundred and fifty dollars in cash. He also told defendant other types of items he could purchase. He explained that he would have to know if a particular item were stolen because he would sell it at a different place than if it were not stolen. He told defendant that if he sold any stolen property legitimately, they both could be arrested. This conversation was videotaped and the tape was played for the jury.

However, the discussion about the sale of the vehicle which took place outside the building was not video-taped or recorded because there was no recording equipment outside. McPherson further testified that Kirk was not a paid police informant and specifically was not paid to bring defendant to the "sting" operation. He did testify that after Kirk had introduced defendant to him at Woody's Knothole that day, he gave Kirk some money to go to a nearby liquor store and to buy some drinks for all of

them. Kirk returned after the transaction was concluded and gave McPherson the drinks and the change.

Defendant testified on his own behalf and denied any participation in the theft or the conspiracy. He did admit, however, that he had been convicted of several prior felonies and had used several aliases in the past. He testified that Kirk had negotiated the sale of the vehicle with McPherson over the telephone and that defendant had just agreed to accompany Kirk to Woody's Knothole but wasn't involved in any way with the sale of the vehicle. The state also introduced into evidence a video tape which showed McPherson giving a summary of the transaction after Kirk and defendant had left which was called a "wrap-up." McPherson testified that these "wrap-ups" were normal procedure so that the details of the transaction could be summarized before they were forgotten.

■ Defendant now contends that there was not sufficient evidence to support his convictions because Kirk did not testify to establish his part in any conspiracy and McPherson should not have been permitted to testify about his summary of what occurred outside the range of the video equipment.[1]

■ We first consider the sufficiency of the evidence on the conviction for theft. It is axiomatic that as a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Muse v. State*, (1981) Ind., 419 N.E.2d 1302; *Wofford v. State*, (1979) 271 Ind. 518, 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. The triers of fact may draw reasonable inferences from

facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely upon circumstantial evidence. *Tunstall v. State*, (1983) Ind., 451 N.E.2d 1077; *Harris v. State*, (1981) Ind., 425 N.E.2d 112.

■ In this case, the evidence clearly showed that a few hours after Graham discovered the theft of his automobile, the car was driven to Woody's Knothole. Defendant negotiated the sale of this vehicle with McPherson and accepted $650 in payment for it. McPherson testified that defendant told him he had stolen the automobile earlier that day. Defendant's friend, Kirk, was not involved in the negotiation of the sale or the exchange of money. This is clearly sufficient evidence to support the jury's conclusion that defendant was guilty of theft since he unlawfully and knowingly exerted unauthorized control over Graham's vehicle. *Muse v. State*, 419 N.E.2d at 1304. The jury had ample evidence upon which to judge the credibility of both McPherson and defendant. There was no error in McPherson's presentation and testimony about the video tape wrap-up of the transaction as this tape was part of the normal police records in this case. There was sufficient evidence to support defendant's conviction of theft.

■ In considering the question of the sufficiency of the evidence on the conspiracy count, we note that the state based this charge upon the fact that defendant agreed with McPherson for the illegal sale of Graham's stolen vehicle. The record shows that defendant and McPherson did agree to carry out an unlawful sales transaction involving Graham's car which deprived Graham of the value and use of his property. However, there was no agreement between McPherson and defendant other than the sales agreement. A conspiracy requires an intent to commit a felony and an intent to

1. We note that defendant also argues that his guilty plea for the four additional theft charges was not knowingly and voluntarily given as the record does not show whether he was properly advised of his rights at that time. It is clearly established, as the state points out, that a guilty plea may not be challenged by a motion to correct errors and direct appeal. *Weyls v. State*, (1977) 266 Ind. 301, 362 N.E.2d 481. There is nothing on this issue for us to address.

**1226**

agree to commit a felony. Ind.Code § 35–41–5–2 (Burns 1979 Repl.).

In a fact situation similar to this case, the Court of Appeals found that when no prior agreement between the parties is shown by the record, the sales agreement in and of itself does not prove that a conspiracy to commit theft existed. *McBride v. State*, (1982) Ind.App., 440 N.E.2d 1135, *transfer denied* March 23, 1983. The court followed the reasoning of several federal courts and concluded:

> "The illegal sales relationship here requires an intent to deprive the owner of the value or use of the vehicle or an intent to receive or dispose of the property. A conspiracy requires two intents: an intent to commit the felony *and* an intent to agree to commit a felony. The State proved only the intent to commit the felony of theft by the sales relationship. Some evidence beyond the single transient sales transaction is required to prove defendant's intent to agree. Without evidence of an understanding beyond the sales agreement there is no proof of a conspiracy, only a disposition of stolen property."

*McBride v. State*, 440 N.E.2d at 1137 (citations omitted).

The state attempts to distinguish this case from McBride and argues that defendant's general conversation with McPherson about other types of stolen property to sell and the hours that Woody's Knothole was open was enough to elevate the instant sales transaction into a conspiracy. However, it is clear that there was no *prior* agreement here between defendant and McPherson regarding the stolen vehicle and their conversation about other stolen property could not prove the existence of a conspiracy involving Graham's car. The conviction for conspiracy to commit theft must be reversed.

This cause is remanded with instructions to vacate the judgment of conviction and sentence on the charge of conspiracy to commit theft. The trial court is in all other things affirmed.

Judgment affirmed in part and reversed in part with instructions.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.